*CINCINNATI, H. & D. RY. v. STANISLAUS TAFELSKI, ADMR.

1. NO RIGHT EXISTS FOR PERSON TO STORE DYNAMITE WHERE AND HOW HE CHOOSES ON HIS OWN PROPERTY IF PROPERTY OR LIVES OF OTHERS WILL BE ENDANGERED.

   A railroad company does not have an unquestionable right to store its dynamite cartridges wherever and however it pleases upon its own property; such dangerous substance must be so taken care of that it will not injure the property and lives of others.

2. NOT ERROR TO PERMIT WIDOW AND CHILDREN TO SIT WITHIN BAR WHEN THEY ARE BENEFICIARIES OF THE CASE.

   It is within the discretion of trial court to permit a widow and children, beneficiaries of the trust represented by the nominal plaintiff, to sit within the bar and in view of the jury during trial, and overruling a request to exclude them is not error.

3. PROPOSITION ONCE OVERRULED BY COURT MAY SOMETIMES BE PROPERLY RENEWED.

   There may be cases when counsel may properly renew some proposition to the court even after it has ruled against him, if he thinks he can throw new light upon the matter, and discussion before the jury as to the propriety of certain argument is not necessarily misconduct.

[Syllabus approved by the court.]

ERROR to Lucas common pleas court.

Julian Tyler, for plaintiff in error.
O. S. Brumback, for defendant in error.

## WILDMAN, J.

This is a proceeding to reverse a judgment rendered in favor of Tafelski in the court below upon a verdict of the jury for $5,500 damages. Tafelski is the representative of the estate of one John Bugaj who was killed by an explosion of dynamite in the yard of the defendant company, the dynamite being stored so as to be ready for use in breaking up and dislodging frozen iron ore. The occurrence was on January 30, 1905, and this dynamite and fulminating caps were stored in one of two "shanties," or unused freight cars which had been taken from their trucks and were kept upon the company's grounds adjacent to some of their tracks.

The claim of the petition is, in one respect at least, that the company was negligent in storing dynamite and caps in this car, in a cer-

*Affirmed, no op., *Cincinnati, H. & D. Ry. v. Tafelski*, 55 Bull. 423; 83 O. S. 000.

Lucas County

tain cupboard therein and at the same time providing these cars as places for rest for employes when awaiting their call to work, or, at least, in permitting the workmen to congregate in these cars. In that season of the year, in extremely cold weather, the car in which the dynamite and fulminating caps were stored was warmed by a stove, supplied with fuel presumably owned by the company. It is claimed on behalf of the plaintiff in error that the decedent, Joseph Bugaj, who was killed by the explosion, was at best a mere licensee of the company in the occupancy of this car or in being in its immediate vicinity at the time of the explosion; that he was not at that time in the prosecution of any work for the company and that he was not directed by the company to be upon the car or about it. Some of the dynamite sticks or cartridges were taken from the cupboard where they were stored and placed upon a shelf, very close to the stove, which was evidently heated to an extreme heat. There is testimony in the case that it was very commonly heated "red-hot." The grease or oil on the dynamite, took fire by reason of its proximity to the stove, which fire finally seems to have reached the cupboard where the caps and other dynamite cartridges were stored.

A man by the name of Tomas, another employe of the company, whose duty it was to explode the cartridges, having the key to the cupboard, removed some of the boxes of dynamite cartridges therefrom, and threw out from the car some of those which had been put upon the shelf, but he was unable to remove all that were in the cupboard. The men who were in the car took fright when the fire started, removed themselves from the car and in doing so knocked Tomas down, and he was finally obliged to abandon the effort to rescue the remaining cartridges from the cupboard. The explosion seems to have caught Bugaj when he was in the neighborhood of this car and in a sort of a passageway between another box car used for a similar purpose and a car containing coal, or at least one of a train of freight cars situated upon another track and but a few feet from the one of the box cars which it is not claimed contained dynamite cartridges and which was not fired. The side door of that car which I have last mentioned was swung open and extended as it swung open so close to her car which was standing upon the other track that it is claimed on behalf of the plaintiff below it apparently barred escape—and the claim is that probably in his effort to run away, he ran into this sort of a blind alley and was stopped there; at any rate, that is where his body was found.

Numerous reasons are assigned by the plaintiff in error for the setting aside of this judgment. It would not be profitable to review them

Railway v. Tafelski.

all in detail, but I will refer very briefly to some of those which have been most prominently mentioned and discussed.

In the first place, it is said that at the close of plaintiff's evidence, and perhaps at the close of the whole evidence, motions were made to arrest the case from the jury upon two grounds: One, that the petition did not state facts to constitute a cause of action; the other, that there was no proof to justify a verdict for plaintiff. The court overruled these motions, and, of course, the first question which would address itself to our minds is the question of the sufficiency of the petition itself. We deem the petition sufficient. It clearly charges that it was the duty of the company to store the dynamite and caps in some place at a distance from that in which the men were permitted to congregate when waiting for their call to work; that that duty was violated; that the caps and cartridges were in this cupboard; that plaintiff's decedent was not aware of their being there; that he was not aware of the dangers arising from their being so stored; that the company did have knowledge of their being so stored and knew the danger and negligently permitted them to remain. We think that the petition is sufficient and that the court did not err in overruling the motion upon that ground.

We think, further, that there was evidence justifying the leaving of the matter to the jury to determine whether or not the company was negligent in these respects. We are not inclined to agree with counsel for plaintiff in error that a presumption arose from the evidence in the case that the decedent was guilty of contributory negligence so that it became essential to remove such presumption. He is not here to testify and no one is able to describe his conduct specifically. We have the evidence as to the general conduct of the persons who were in the car and attempting to escape, but very little is known as to what plaintiff's decedent did, except that he died there very near the burning car. He may have been struck by some of the flying objects from the car and there is no question, indeed, that his death was caused, directly by the explosion. It is claimed, however, in behalf of the plaintiff in error, that if anyone was negligent it was Tomas in taking the dynamite sticks from the cupboard and placing them upon the shelf where they caught fire. It may be that there was negligence of Tomas; it may be true, as claimed by counsel, that he was a fellow servant of plaintiff's decedent; but we do not think, whether that be so or not, it settles the inquiry. If the accident was due to the negligence of Tomas without the concurrence of any negligence of the defendant company, it would, of course, at once raise the question as to whether he was a fellow

servant. There is not much doubt in our minds that he was such, and the court below probably took the view that he was so, although there is some argument by counsel for plaintiff in error that he was not at the moment so engaged in the service as to come within the rule of fellow servant. We are not inclined to adopt this position of counsel for plaintiff in error, but we rather base our judgment upon the view that there was evidence tending to show that there was only concurrent negligence in the act of Tomas.

Now, addressing ourselves to the question whether the plaintiff's decedent was there by the invitation of the company, we think it may fairly be inferred from all the circumstances of the case, that these cars were placed upon the company's grounds, or permitted to remain there with the trucks removed, to be used in the manner in which they were used. It appears from the evidence that that had been so done for a long time. The stove in this car from which came the conflagration which destroyed it, was manifestly the stove of the company; the fuel, the fuel of the company. The dynamite cartridges and caps were used there by authority of the company. Not only Tomas had a key to it, but another person, said to have been a foreman, had a key to the same cupboard. The dynamite was stored there for the company's purpose and we can hardly come to any other view than that the company intended that the cars should be used for the purposes for which they were used, that is, as a sort of congregating place for the men in cold weather to remain comfortably until such time as they were to do their work. We think then that the evidence tends to sustain the petition of the plaintiff as to the company's making this sort of a provision to enable the company to conduct its business and for the storing of dynamite.

And now, without dwelling upon the claims remaining, I will consider for a moment the claim of the plaintiff in error as embodied in several requests to charge prior to the argument to the jury.

Proceeding upon the theory that the company had an unquestionable right to store its dynamite cartridges wherever it pleased upon its own property, it substantially asked the court, in several varying forms, to give such instructions to the jury, and counsel argue to us that the court was in error in refusing these requests. Some of them may embody abstractly correct principles of law, but, granting that, the court was not required to give them without such qualification or further instruction to the jury as might safeguard the jury against being misled. If these instructions had been given to the jury as requested by the plain-

Railway v. Tafelski.

tiff in error, they would have remained in the minds of the jury through the entire course of the argument and until, under the rules of procedure, the court gave its general charge serious injury might result to the rights of the plaintiff below by reason of such misconception being permitted to remain in the minds of the jury during this time. A man may not keep a vicious dog upon his premises at such time as persons, by his invitation or permission are liable to come upon the grounds, without chaining up the dog or taking care of it in some way to protect such persons from injury; and the authorities are very numerous that in the storing of dangerous substances or articles upon one's own property they must be so taken care of that they will not imperil the property and lives of others. So we think that the court was justified in refusing these several instructions since they were not coupled with some sort of additional instruction as to the storing of dynamite and caps in close proximity to, or in a car which was liable to catch fire from such causes as we have disclosed in this case.

I will not dwell longer upon this phase of the case. Some complaint is made that counsel for defendant in error caused the widow and a number of the children of decedent to come within the bar of the court and sit in view of the jury during the progress of the trial against the objection of defendant below, that the sympathy of the jury might thereby be aroused and the defense of defendant be prejudiced thereby. A request was made of the court to exclude the widow and the children from the court room or from the view of the jury and the court overruled the request and it is said that the court thereby committed error. It is not contended but that ordinarily, such matters are within the discretion of the court, but it is claimed that there was an abuse of that discretion such as justify a reversal. We are not inclined to agree with counsel in this regard. The widow and children, while not parties to the suit, are beneficiaries of the trust represented by the administratrix, who is the nominal plaintiff. The widow's presence might be essential to the proper trial of the case, she might have knowledge of circumstances which would affect the issue as to the conduct of the case in the interest of herself and children such as might almost necessitate her presence in court; we are not inclined to think that it was advisable or that it would have been proper to exclude her from the trial. It might, in some instances, be proper enough to send out little children, whose presence could afford no special aid, but I think it may be said that in suits of this character, in view of some of the decisions under this statute, where suits are prosecuted by an administratrix and where the right to recover for the

Lucas County

widow and next of kin depends somewhat upon their condition and necessities and the extent to which they would be liable to derive support from the decedent, had he lived, under these circumstances it might be even proper to exhibit to the jury the children, for the purpose of enlightening the jurors as to their age, as to their condition of health and necessities as requiring the support that might have been afforded by the decedent.

In viewing the whole matter, we cannot say that the court abused its discretion in overruling the request.

It is said that counsel for the plaintiff below was guilty of misconduct in argument to the jury in using, as an illustration, perhaps, a stick of dynamite from which the fuse had been removed, or something of the kind, in order to explain to them the nature of the transaction and the uses which were made of dynamite and fulminate caps. Objection was made to this and the court directed counsel not to proceed with the illustration. Counsel insisted to the court that he had a right to do this, saying once or twice to the court that he thought he had such right. It appears, however, that he was addressing himself to the court and was perhaps over-earnestly insisting upon his right. It is not always wise for counsel to persist after a court has decided adversely, but still counsel in his zeal for his client may very well renew some proposition to the court even after it may have ruled against him, if he thinks he can throw any new light upon the matter and we cannot say that there was any misconduct in his so doing.

There are some other points which arose during the progress of the trial, but, without further comment, it is sufficient to say that we find no error in the case which operated to the prejudice of the plaintiff in error justifying a reversal and the judgment of the court below will be affirmed.

**Parker** and **Kinkade, JJ.,** concur.